UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Pamela Mohr

    v.                                    Civil No. 14-cv-245-JD
                                            Opinion No. 2015 DNH 073
Carolyn Colvin,
Acting Commissioner,
Social Security Administration


O R D E R


    Pamela Mohr seeks judicial review, pursuant to 42 U.S.C.

§ 405(g), of the decision of the Acting Commissioner of the

Social Security Administration, denying her application for

social security disability benefits.  Mohr moves to reverse and

remand the decision, contending that the Administrative Law

Judge ("ALJ") erred in assessing her treating physician's

opinion and in finding that she could do her past relevant work

at a telecommunications company.  The Acting Commissioner moves

to affirm.


Standard of Review


    In reviewing the final decision of the Acting Commissioner

in a social security case, the court "is limited to determining

whether the ALJ deployed the proper legal standards and found

facts upon the proper quantum of evidence."  Nguyen v. Chater,

172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276
F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's
factual findings as long as they are supported by substantial
evidence.  § 405(g).  "Substantial evidence is more than a
scintilla.  It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." Astralis
Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d
62, 66 (1st Cir. 2010).  Substantial evidence, however, "does
not approach the preponderance-of-the-evidence standard normally
found in civil cases." Truczinskas v. Dir., Office of Workers'
Compensation Programs, 699 F.3d 672, 677 (1st Cir. 2012).

<u>Background</u>

The background information is summarized from the parties'
joint statement of material facts.

Mohr filed for disability insurance benefits in January of
2012.  When her application was denied initially, she requested
a hearing before an ALJ, which was held on May 14, 2013.  Mohr
was fifty-seven years old at the time of the hearing.  Her
educational background includes a four-year college degree and
prior work, until 2007, for a telecommunications company.

The medical record begins in January of 2011 when Mohr saw
her primary care physician, Dr. Andrew Sebastyan, because of

pain and numbness when she walked, a cough, a sleep problem, and abdominal pain and nausea.  Dr. Sebastyan found edema and decreased sensation in Mohr's legs and advised her to drink less alcohol.  Subsequent treatment notes by Dr. Sebastyan and Carol Pelletier, APRN, DNP show that when Mohr presented with sleep problems and other ailments, she was advised to drink less alcohol but did not comply with that advice.  Mohr also refused to use a CPAP machine for sleep apnea.

In June of 2012, Dr. Sebastyan prepared a functional assessment opinion for Mohr in which he diagnosed Mohr with various ailments but did not mention Mohr's use of alcohol. With respect to function, Dr. Sebastyan wrote that Mohr had frequent problems with concentration, could sit for only forty-five minutes with a total of four hours in a work day, could stand for five minutes with standing and walking for a total of two hours in a work day, would need to elevate her legs at heart level for sixty percent of a work day, and needed to use a cane. He thought Mohr could occasionally lift ten pounds, had a variety of reaching limitations, would have good and bad days, and would be absent at least two days each month.

Mohr was represented by counsel and testified at the hearing held in May of 2013.  She said that foot pain kept her

3

from working, that she often had to lie down to reduce the pain, swelling, and numbness in her legs, and that Dr. Sebastyan suggested that she use a cane.  Mohr also testified that she had stopped drinking on January 1, 2013, and described her previous work at a telecommunications company.

A vocational expert appeared and testified at the hearing. The vocational expert said that Mohr's description of her past work sounded like a combination of two jobs listed in the Dictionary of Occupational Titles, "laborer stores" and customer service representative.  Mohr's attorney argued that dividing the past job into two categories would be inappropriate.

The ALJ issued a decision on June 14, 2013, in which he found that Mohr had severe impairments of alcoholic neuropathy, sleep apnea, and obesity.  He found that she had the residual functional capacity to perform sedentary work with some postural limitations and that she could do her past work at a telecommunications company, as that work was actually performed. Based on those findings, the ALJ concluded that Mohr was not disabled.  The Appeals Council denied review.

## Discussion

Mohr contends that the ALJ's decision must be reversed and remanded because he erred in giving little weight to Dr.

4

Sebastyan's opinion, in failing to consider Dr. Sebastyan's
opinion about absenteeism, and in relying on a clerical error by
the Social Security Administration to find that Mohr could do
her past work.  The Acting Commissioner moves to affirm, arguing
that the ALJ properly evaluated Dr. Sebastyan's opinion and that
substantial evidence supports the ALJ's finding that Mohr could
do her past work as it was actually performed.

        Disability for purposes of a social security application
means the "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).
The ALJ follows a five-step sequential analysis for determining
whether a claimant is disabled.  20 C.F.R. § 404.1520.  The
claimant bears the burden through the first four steps of
proving that her impairments preclude her from working. Freeman
v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth
step, if the case is not resolved in the prior four steps, the
ALJ determines whether work that the claimant can do, despite
her impairments, exists in significant numbers in the national
economy and must produce substantial evidence to support that

finding.  Seavey, 276 F.3d at 5.  A claimant cannot be awarded
benefits, however, if alcoholism or substance abuse was a
contributing factor to a finding of disability.  20 C.F.R.
§ 404.1535; Daniels v. Colvin, 2014 WL 6668783, at *1 (D.N.H.
Nov. 21, 2014).

### A.   Medical Opinion Evidence

Mohr contends that the ALJ erred in failing to give
controlling weight to Dr. Sebastyan's opinion based on a
mistaken finding that the opinion was inconsistent with the
record.  She also contends that the ALJ erred in failing to
consider Dr. Sebastyan's opinion about her absenteeism.  The
Acting Commissioner argues that the ALJ properly considered and
evaluated Dr. Sebastyan's opinion.

### 1.   Treating source.

The ALJ is required to consider the medical opinions in a
claimant's administrative record.  20 C.F.R. § 404.1527(b).
Medical opinions are evaluated based on the nature of the
medical source's relationship with the claimant, the consistency
of the opinion with the other record evidence, the medical
source's specialty, and other factors that may be brought to the
ALJ's attention.  § 404.1527(c).  A treating medical source's

6

opinion about the claimant's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  § 404.1527(c)(2).

In the residual functional capacity questionnaire, Dr. Sebastyan wrote diagnoses of hypertension, hyperlipidemia, hypothyroidism, polyrhythmia, obstructive sleep apnea, obesity, edema, GERD, smoking, and neuropathy.  Dr. Sebastyan did not mention Mohr's alcohol use in his diagnoses or his assessment of residual functional capacity.  Because of the diagnosed ailments, Dr. Sebastyan found that pain would frequently interfere with Mohr's ability to attend and concentrate, that she could sit for only forty-five minutes at a time for a total of four hours and could stand for only five minutes at a time for a total of two hours, that she would need breaks every fifteen to thirty minutes, that she would need to elevate her legs while sitting and would need to use a cane while walking, that she could only occasionally lift up to ten pounds, and that she would have significant limitations in reaching.  In addition, Dr. Sebastyan wrote that Mohr would have good days and

bad days and would likely be absent two days each month in good weather and three days each month during the winter.

The ALJ reviewed Dr. Sebastyan's opinions and acknowledged that Dr. Sebastyan is Mohr's treating physician.[1]  He gave little weight to Dr. Sebastyan's opinions, however, because the opinions were inconsistent with some of Mohr's treatment notes and with Mohr's description of her daily activities.

Specifically, the ALJ cited Dr. Sebastyan's treatment notes results from examinations during the applicable period that indicated no edema, full ranges of motion, and normal neurological.  The ALJ also noted that Dr. Sebastyan failed to mention Mohr's alcohol abuse while his treatment notes diagnosed alcohol abuse and found that alcohol abuse affected Mohr's polyneuropathy.  The ALJ stated that although Dr. Sebastyan said Mohr uses a cane in the residual functional capacity questionnaire, there was no prescription for a cane in her record and Mohr herself reported that she only used a cane to go to the store.

---

[1] Although Mohr mentions that an ALJ generally gives more weight to the opinions of a specialist, as provided by 20 C.F.R. § 404.1527(d)(5), she does not explain Dr. Sebastyan's medical specialty.  The record indicates that Dr. Sebastyan is Mohr's primary care physician and does not otherwise show a specialty.

Mohr cites some treatment notes that indicate leg swelling
and neuropathy, which would support Dr. Sebastyan's opinion.  It
is the ALJ's role, however, to weigh and resolve conflicts in
the evidence.  Irlanda Ortiz v. Sec'y of Health & Human Servs.,
955 F.2d 765, 769 (1st Cir. 1991).  The ALJ concluded that the
treatment notes were not consistent with Dr. Sebastyan's
opinions, which is supported by the record.

In contrast to Dr. Sebastyan's opinion that Mohr could only
sit for forty-five minutes at a time, the ALJ noted that Mohr
described her daily activities to include sitting in front of
the computer all day.  The ALJ went on to summarize Mohr's
description of her activities as a "fairly active lifestyle"
that includes, in addition to extensive computer use, the
ability to attend to her personal care, do housework although at
a slower pace, to drive a car, and to do her own grocery
shopping.  The ALJ also noted that Mohr enjoyed cooking.

Mohr contends that her description of her daily activities
contradicts the ALJ's finding that she had an "active
lifestyle."  Mohr misquotes the ALJ's finding, which was that
she described a "fairly active lifestyle."  Mohr's report of her
daily activities in her function report dated February 6, 2012,
supports the ALJ's assessment.

9

The ALJ properly explained the weight attributed to Dr. Sebastyan's residual functional capacity assessment.

2.  Opinion on absenteeism.

Mohr contends that the ALJ's decision must be reversed because he did not discuss Dr. Sebastyan's opinion about her absenteeism.  In support, Mohr argues that because the ALJ did not discuss Dr. Sebastyan's opinion on absenteeism, he must have substituted his own evaluation of the medical evidence for a treating source's opinion.  Mohr contends that her case is analogous to Walker v. Barnhart, 2005 WL 2323169 (D. Mass. Aug. 23, 2005).

In Walker, the ALJ properly explained the weight given to the claimant's treating sources' opinions on psychological limitations.  Id. at *17.  He did not reference or discuss physical residual functional capacity assessments, one of which included an opinion about absenteeism.  Id. at *17.  Because the ALJ cited no record evidence to support his findings on the claimant's physical limitations due to fibromyalgia, the court concluded that the ALJ substituted his own judgment for the record evidence.  Id. at *18.

In this case, the ALJ discussed Dr. Sebastyan's opinion and gave reasons for giving that opinion little weight.  Although an

10

ALJ must consider all of the evidence in the record, an ALJ is not required to discuss every piece of evidence as long as the ALJ's finding is supported by substantial evidence. Skellie v. Colvin, 2015 WL 858357, at *6 (D.N.H. Feb. 27, 2015); Trumbull v. Colvin, 2015 WL 114164, at *6 (D.N.H. Jan. 8, 2015); Perry v. Colvin, 2014 WL 4725380, at *2 (D.N.H. Sept. 23, 2014). More specifically, an ALJ is not required to discuss every finding in a medical opinion as long as the opinion was considered as part of the administrative record and weighed as required by § 404.1527(c). Weisgarber v. Colvin, 2014 WL 3052488, at *15 (E.D. Tenn. July 3, 2014); Budensiek v. Colvin, 2013 WL 4010284, at *6 (D. Md. Aug. 5, 2013). The ALJ did not err in failing to discuss Dr. Sebastyan's opinion about absenteeism.

   B.  Alcohol abuse.

   In determining disability when the claimant abuses alcohol, the ALJ must address an additional element. Caswell v. Colvin, 2014 WL 4749456, at *6 (D.N.H. Sept. 24, 2014). That is because a claimant is not eligible for benefits if alcoholism was a material factor in the disability determination. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(a); Alker v. Colvin, 2014 WL 677866, at *7 (D.N.H. Feb. 20, 2014). The claimant bears the burden of showing that her alcoholism was not a material factor

that contributed to the disability determination.  Caswell, 2014
WL 4749456, at *6.

The ALJ noted that Mohr's treatment notes showed
"persistent issues with alcohol abuse" and found that she had a
severe impairment due to "alcoholic neuropathy."  The ALJ
concluded, however, that Mohr was not disabled because of her
impairments.  Therefore, the ALJ appropriately did not consider
whether Mohr's alcoholism was a material contributing factor to
disability.[2]

C.  Previous Work

At Step Four of the sequential analysis, the ALJ determines
whether the claimant is able to do her past relevant work,
either as that work is categorized in the Dictionary of
Occupational Titles or as the work was actually performed by the
claimant.  Santiago v. Sec'y of Health & Human Servs., 944 F.2d
1, 5 (1st Cir. 1991).  The claimant bears the burden of making a

_____

[2] If that analysis had been necessary, Mohr would not have
carried her burden to show that alcoholism was not a material
contributing factor.  Although Mohr testified that she had
stopped drinking on January 1, 2013, and that the swelling in
her feet continued, she lacked any medical evidence to support
her testimony.  The ALJ supportably found, based on the record,
including Dr. Sebastyan's notes, that Mohr's leg neuropathy was
related to her alcohol abuse.  As the ALJ noted, Dr. Sebastyan
did not account for the effects of alcohol abuse in his opinion.

threshold showing that she cannot do her past relevant work.
Id. at 5-6; Chippendale v. Colvin, 2015 WL 225434, at *4 (D.N.H.
Jan. 15, 2015).

In her Disability Report, Mohr described her previous work
at the telecommunications company as "[s]uppl[ying] a service
provider with required tools and resources and overall support
for installation of network services." With respect to the
exertional demands of the job, Mohr stated that she sat for
eight hours and that during that time she typed and handled
small objects that weighed less than ten pounds.

In contrast to that description, Mohr testified at the
hearing that her job at the telecommunications company was
"dedicated to the installers." She said that when the
installers would have issues with materials "they would call
[her] and yell at [her]" and she would help them "track down
what it is they're looking for." If the installers could not
find what they needed, she would go to the warehouse to help.
She made arrangements to have materials sent to the installers
who were working all over New England. Mohr said that she spent
half of her time on the telephone and the other half helping the
installers find materials.

The vocational expert thought that the job Mohr described at the hearing would be a "laborer, stores" combined with a customer service representative.  The vocational expert testified that Mohr could do the customer service representative part of the job with the residual functional capacity described by the ALJ, limited to sedentary work, but could not do the "laborer, stores" part because that required the ability to medium exertional level work.  There was a discussion about whether the job could be divided into parts.

In his decision, the ALJ found that Mohr could do her past job at the telecommunications company as she had described her work in the Disability Report.  Mohr contends that the ALJ relied on a clerical error made by the Social Security Administration in finding that she was able to do her past work. Mohr argues that her past work as "laborer, stores," as identified by the vocational expert, was precluded by the Dictionary of Occupational Titles description of a medium exertional level because the ALJ limited her to sedentary work.

Mohr argues that the job as described in the Disability Report, SSA Form 3368, was incorrect due to an error by "the Social Security employee that completed SSA Form 3368." Specifically, Mohr contends that the employee erred in writing

that she sat for eight hours each day at work and that she never stood or walked.  Mohr provides no evidence, however, about who completed the Report, which is neither dated nor signed.

"To obtain a disability determination by the SSA, an individual must submit several related forms, including an Application for Disability Insurance Benefits (Form SSA 16-F6) (the 'application form') and a Disability Report-Adult (Form SSA-3368-BK) (the 'disability report')." U.S. ex rel. Loughren v. Unum Group, 613 F.3d 300, 302-03 (1st Cir. 2010).  The answers on Mohr's Disability Report are typed.  In response to the question, "Who is completing this report?" the answer written is: "The person who is applying for disability."[3]  In response to the question, "Are you currently working?" the answer written is "No, I have stopped working."  Other questions are also answered in the first person.  As written, the Disability Report appears to have been completed by Mohr. Further, Mohr did not correct or withdraw the description of her past work in the Disability Report but instead provided a different description at the hearing without explaining the discrepancy.

---

[3] In contrast, the form that follows SSA 3368, Disability Report - Field Office - Form SSA-3367, was completed by "B. Smith" and was based on a face-to-face interview with Mohr.

The ALJ relied on the job description provided in the Disability Report to find that Mohr could do her past relevant work.  There is no dispute that the job described in the Disability Report involved sedentary work.  Therefore, the ALJ's finding at Step Four is supported by substantial evidence.

### Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 12) is denied.   The Acting Commissioner's motion to affirm (document no. 14) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph DiClerico, Jr.
United States District Judge


April 1, 2015

cc:  Roger D. Turgeon, Esq.
     Mark J. Alves, Esq.
     Robert J. Rabuck, Esq.